Our next case, which is In Re Constar International Inc. Securities Litigation. May it please the court, my name is Stephen Pearson, and I'm here on behalf of the appellate with the court's permission. I'd like to reserve three minutes. This is a matter which is before the court on a 23-F. We argue that there were a number of errors committed below in connection with the class certification. The first set of errors is the citation by the district court, the standards which are inconsistent with the mandate to engage in a rigorous analysis in trying to determine whether the 23 requirements have been met. Well, you say that, but right after the district court makes a reference as to trying to find a case. Liberal construction. Yeah, liberal construction. It then proceeds to engage in 20 pages of rigorous analysis of the requirements under the class action. Does he not? Well, I think, first of all, we have to distinguish between what the special master did. I guess that's the special master. And what the district court did. I guess it's the Eisenberg quote, but then followed by the special master with 27 pages of analysis. Yeah. We begin our analysis by taking a look at what the district court did and the extent to which it's, the extent to which and whether it's clear that what the district court was doing was adopting in whole or in part what the special master did. So when you start with the district court, what you see is a number of statements about security cases are different and they're particularly appropriate for class treatment. You need to use a liberal construction in a securities case. You should resolve all doubts in favor of class certification and nothing in the district court opinion evidencing and understanding that the role that is at play now is the need to engage in a rigorous analysis. She actually, I had the same take as Judge Rendell, and the master actually used that same phrase, rigorous analysis. In other words, she undertook a rigorous analysis and stated that as her standard and also stated careful examination. And then about 20 pages of analysis. I agree. And the district court, I mean, the district court does quote Eisenberg. And it's a six-page order by the district court. Well, that's because most of his work was done by Judge Welsh. He says, after careful examination of the substantial materials presented by the parties, the report correctly found that the plaintiff's established. I mean, that's judicial economy in a sense incorporating what the report. Well, a couple of responses. Again, when you look at the district court opinion and when the district court opinion gets to the very end, right at the bottom of page five over to page six, it refers to the special master's report and says that the special master engaged in, I forget the exact language, a comprehensive review of the materials submitted, something to that effect. The problem, of course, with that is that even back in the Eisenberg days, courts engaged in a comprehensive analysis of the materials, a comprehensive review of substantial materials. So the issue is what's the standard that's being applied to that? And it's unclear from the face of the district court opinion whether the district court believes in the face of the objections that the appellants lodged, whether the special master applied the rigorous analysis standard or something less than that. This is at best, we would argue, for the plaintiffs analogous to the hydrogen peroxide case where the district court said explicitly after going through the exact same sort of Eisenberg statements that it was engaging in a rigorous analysis. The court then went on, especially with respect to the expert testimony, to actually engage in what looks like a pretty thorough analysis of comparing what the plaintiff's expert said to what the defendant's expert said. If that liberal construction statement had not been made, is there anything to suggest that there was anything other than a rigorous analysis? Absolutely. And for both the special master and for the district court, there was a complete absence of focus on a number of absolutely critical issues that we had argued needed to be addressed. So, for example, the market efficiency issue was shunted off to one side. Both the special master and the district court said that since liability is the focus of the class certification inquiry, the court wasn't going to consider issues of injury or loss causation. Well, tell me, under a Section 11 case, you cite Section 11 how many times in your brief? To be honest with the court, I didn't count up the number of times. Well, it would have been easy because you cited it once. This is a Section 11 case, is it not? It is indeed. All right. What needs to be shown in a Section 11 case? What needs to be shown as a matter of liability or what needs to be considered on class certification? Well, a violation of Section 11 is what? Give me the line. A violation of Section 11, you need to show a material misrepresentation. And a registration statement. And a registration statement. And then you take the price the stock sold at and the price of the stock at the time suit was brought or at the time there was a disclosure. But at the time suit was brought is one of the measures, correct? Correct. And so what's so complicated about that? It isn't. If you find a misrepresentation. Yeah, where's the individual issue of any kind? First of all, I think the law is clear in this circuit because it's been repeatedly stated to be the law in this circuit. We have to distinguish between what it takes to make out a prima facie case under Section 11 and whether this Section 11 case is going to be certified as a class action. Those are two totally separate questions. And under class action we have the issue of predominance, which I think is your predominant issue, right? Correct. And in determining whether a class ought to be certified, one of the things that has to happen is there needs to be consideration of affirmative defenses, assuming that parties have affirmative defenses. So the 11E defense, which is an affirmative defense, which is that the loss that you talked about, Judge Roth, was caused not by the misrepresentation but by other factors, that is an affirmative defense that's available to defendants in a Section 11 case. But that's not an individualized issue either. Now in a Section 11 case, that implies to all the shares itself. It's uniform. It wasn't caused by the failure to disclose. It was lost by the fact that the hurricane came in and knocked down the buildings of the company and everybody assumed the company was going to be destitute. That may or may not be true in an efficient market case. The problem we have here is that the plaintiffs have refused to take a position on whether the market is inefficient. Let me give you an example. But can you answer the question? What individualized issue is there in the class certification? Let me give you an example from a loss causation standpoint. Let me give you the example if it's an inefficient market. In an efficient market, the law is clear that if a shareholder sells his, her, or its stock prior to the corrective disclosure, that person doesn't have a claim. And the reason for that is the truth hasn't come out yet to the extent that the stock price has been inflated by the lie in the registration statement. But the court didn't accept or didn't buy into the efficient market theory. Why is it relevant at this point? The court actually failed to either buy into the efficient market theory or not buy into the efficient market theory. It refused to address. But it did say that at this point liability is really the only issue. It did say that. But there, but that's sort of putting it in my view, it's putting the cart before the horse. Because if it is an efficient market, then that may well be true. If it's an inefficient market, there is no way to judge. You'll have to judge person by person. No. What do you have to judge? Let me give you a hypothetical. Please. Okay. There are alleged misrepresentations in the statement. The plaintiffs then say, we bought the stock at $12. It was worth $5.20. And that is due to the fact of the misrepresentations. And the defendants come in and say, no, no, no. That damage was caused not by the misrepresentations, but by the fact that it was a cold summer and fewer beverages were bought, and by the fact that people began to distrust plastic containers. And that is why the value of the stock went down, not because of the misrepresentations. Now, why is that an individual assessment? Because in an inefficient market, there is not uniform knowledge of that. But you're not talking about what they knew. You're talking about what caused the price of the stock to go down. That's true. But the issue is how do you try that on a class-wide basis? Because it caused everybody's stock to go down. It didn't cause individual stock to go down. No, because you can't say that that caused, with all due respect, Your Honor, that it caused everybody's stock to go down. In an efficient market, the market knows everything. So if you put a piece of information out, just as you suggest, the market assimilates that information and puts a value on it. It says, in your example, the price goes down this much because we now, we the market, now know that information. That's what an efficient market does. In an inefficient market context, there's nobody to do that. But the plaintiffs are saying, we bought our stock for $12 and it was worth $5.20 when this suit was brought and that drop was caused by the misstatements. And you say, no, no, no, that drop was caused by the cold summer and the distrust of plastic bottles. But that's a liability issue. On the class certification issue. Isn't that the causation of the stock? On the class certification issue, can you address that in a class-wide setting? Or do you have to go person-by-person? What does the person-by-person accomplish? I don't know. Don't tell me about inefficient market. Tell me about predominance of issues in the case. Because in the setting that Judge Roth was describing, each individual, buyer and seller, has different information. Some may know what Judge Roth posits. Some won't know what Judge Roth posits. What does that have to do with anything? Because that goes to the value of the stock. But they know the value of their stock was $5.20 when the suit was brought. Yeah, but on the affirmative defense, we're going to come in and say that. The plaintiffs are going to say something else. And we have a right to say that the drop was caused by something else, as you point out. The issue is normally, in a market, the market makes that determination. That the value of the misrepresented information is $5 or $6 or $7. You watch how much it drops. That's the Merck rule. But doesn't the efficient market require some sort of history where there's trading of stocks so that there's information that's available or that is generated as a result of trading that prospective investors will consider? But in this case, there's no trading. There is one price for the shares that was stated in the IPO, and that's it. And Section 11 proposes a mathematical formula that provides for damages for a drop in the shares. Why do you need the efficient market theory or inefficient market theory? Section 11 doesn't contemplate any of that. Well, for two reasons. First of all, encompassed within the class are aftermarket purchasers who purchased their stock over a period of time after the IPO when lots of information was out there in the marketplace. There was also buying and selling going on long after the IPO. In order to figure out whether or not you can try this on a class-wide basis, whether or not a drop in the stock price was due to the misrepresentation as compared to something else, I would posit that you have one of two choices. You either have an efficient market, which incorporates all the knowledge on which this Court has said you look at the efficient market, and that will tell you whether the stock price drop is due to the supposed misrepresentation, which is the reason why in Burlington Code, in Merck, and all of those cases... They're not Section 11 cases. Is it true that... Specifically in the face of Merck, Merck applies to Section 11. It doesn't seem like Section 11 cares about any of that. Section 11, as Judge Roth put in her hypothetical, once you have a material misrepresentation, that's all you need. And then you have the mathematical formula that determines the amount of damages. If somebody, as an aftermarket purchaser, purchases knowing the misrepresentation, has knowledge of the falsity because a corrective disclosure has been made, does that person get to recover? I don't think so. Second Circuit in the IPO case expressly says that the law in this area in Section 11 cases is if you know the falsity, you don't get to recover. The problem, the confusion here, I think, stems from the fact... Because if you know the falsity, you wouldn't buy the shares. Pardon me? If you knew the truth of the matter is certain, you wouldn't invest. No, but you would... Which case is that? The IPO case. Is that Section 11? Yes. They specifically refer to Section 11, yes. Because IPO stands for Initial Public Offering. I mean, it seems to me you may be talking about individualized testimony of people in order for the court to decide the uniform issue of what caused the loss. Because when it's decided, it's going to be that something caused the loss. And that is not an individualized issue. That is an issue that's going to apply to everyone but requiring individualized testimony. And you know what? We'll hear from you on rebuttal. Thank you. May it please the Court. My name is Eric Alan Isaacson. I'm counsel for the lead plaintiffs, Amish Bhandari and Randolph Redstone, who were appointed by the District Court to represent the class. I'm accompanied by my partner, Andrew Brown, and our colleague and co-counsel, Deborah Grouse. I think you've got it absolutely right. Section 11 presents the most certifiable kind of securities case that's imaginable. If there's a material misrepresentation or omission from the registration statement, the statute itself says that loss is presumed. Would the class include people who bought their stock after the IPO? Absolutely, Your Honor. Then don't you get into individual issues of what they knew when they bought the stock? If the defendants contend that specific class members knew the full truth, then I suppose they can put on a rebuttal case like, you know, by analogy one would do in a fraud in the market case where basic against Levinson, the United States Supreme Court said it's proper to certify a class action in a Section 10B case despite the fact that defendants have the right to come in and rebut reliance by individual class members by showing that individual class members, specific ones, knew the truth or would have bought anyway had they known the truth. That did not defeat class certification in basic, and I don't think it would defeat class certification here. The case law after basic, the academic commentary makes it very clear, as Judge Fuentes observed, that you don't knowingly purchase a stock that's trading at an inflated price. You don't knowingly buy a stock when you're aware of a fraud that other people don't know about yet. It just, as a practical matter, doesn't happen. So I don't think that that's a real problem here. Can you tell me the relationship between the concept of material fact under Section 11 and materiality where we have found that the failure of the drop of a stock in an efficient market shows a lack of materiality of that fact. What's the, how do we reconcile, or is there a distinction between the proof required as to each? I think you're right. There's a distinction between the proof and the element of materiality that's being proved. Section 11 speaks in terms of a registration statement that misstates a material fact or omits material information as of the registration statement's effective date. Now in 10B cases too, the focus is on whether the defendants made a material misrepresentation that was misleading, that they had reason to know was misleading at the time that they made it. The absence of a stock drop, if the stock drop is clearly the first disclosure of the undisclosed information or its effects, the absence of a stock drop is evidence that goes to whether there was a material misrepresentation made at an earlier time. Now information can come into the market in any number of ways, and the fact that you don't have a stock drop may indicate that the market's already figured out the problem. Here, for example, when you've got the announcement that we're going to have to restate goodwill, the announcement itself says, you know, the stock price has dropped a long way from $12 a share in the offering to $5 and change now, and considering the fact that the company clearly is not doing all that well, we're going to have to write off the goodwill. Why didn't the market respond to that? Because the information already was becoming impounded in the stock price. But materiality, is that a subjective analysis? I think Mr. Pearson would probably say that it is. Well, Mr. Pearson's expert seems to say that it is. The United States Supreme Court has said that it's not. The United States Supreme Court and TSC Industries says, and I quote, the question of materiality, it is universally agreed, is an objective one, The disclosure obligations of the securities laws, the standard of liability under Section 11, the standard of criminal liability under Section 24 speaks in terms of whether material facts were misstated or deliberately withheld with respect to Section 24. And would that be, I'm sorry, go ahead. With respect to Section 11, we don't have to have any kind of deliberate misconduct. It just has to be defective. Innocence is not a defense with respect to the company. And the defendants would have to prove an affirmative defense that they acted diligently. But in any event, materiality is something that governs disclosure requirements. It's something that corporate counsel advises the corporation as to what do you have to put into this. Is it a material fact? It goes in your registration statement. If it's immaterial, it doesn't have to go in. But that's not something that turns on what investors are thinking in terms of their individual state of mind six months later. Well, although, isn't it true you could have testimony as to what is important by investors? But the issue that needs to be decided by the court is whether it was material. Could you not have testimony or the view of experts as to what might or might not have been important to an objective? Objectively to a reasonable investor. I'm a reasonable investor. Absolutely. I happen to care about this. But then the issue that's decided is materiality. It's one issue. The issue of materiality is one issue, and the issue of materiality would be decided by the trier of fact. And it's part of the merits of the case. And it's not something that you decide at class certification as a merits issue. The question we've got here at class certification is whether the elements of Rule 23 required for class certification are satisfied. And one of the fundamental questions there with respect to predominance is whether when you go to trial and prove these things up, are they susceptible to common proof? Our prima facie case, clearly, common proof. Their expert says, well, if the market wasn't efficient, then materiality is an individual issue. That ain't the law.  And they say if the market isn't efficient in the sense that it instantaneously reflects any new information, then it's impossible to evaluate the value of the stock unless you have individual interviews with each person who purchased the stock, which I submit is nonsense. It's a very simple, very straightforward pleading requirement on your part. And your burden is really low, it seems, under Section 11. I just got to show a material misrepresentation. That's all. Is that it? That's right. I mean, how about evidence of harm? Maybe the Newton case that requires that there be a showing of some harm somewhere. Well, Newton's a 10B case. It's not a Section 11 case. And Newton is a case that distinguishes most securities cases, including Section 10B cases, saying that if a misrepresentation in the typical case of securities litigation goes to value of the stock, ordinarily certification is appropriate because the value of the stock is subject to common proof. In Newton, the question was whether broker-dealers were executing specific trades at the best available price. It wasn't a question of what's the underlying value of the stock. And it required analysis of individual transactions on an individual-transaction-by-individual-transaction basis, millions and millions and millions of them, with a sampling having been done that suggested that the great majority of them did not involve any violation. So under those circumstances, this court indicated that in a case that does not resonate with the typical 10B action, let alone a Section 11 action, a class could not be certified. Newton also indicates, however, that in cases where reliance can be presumed, and in Section 11 it's not even an element, and where loss causation could be presumed, certification is appropriate. Newton mandates certification. Are there cases where Section 11 class actions have been denied? I guess, are there cases where Section 11 class actions have been denied? There might be a district court case out there someplace that's done it. I mean, Dura was 10B-5. Dura is a Section 10B-5 case. That's right, Your Honor. Absolutely. Because your pleading requirements are burdened quite a bit if we adopt Mr. Farrison's efficient market theory. Well, but Mr. Farrison seems to be shifting all the elements and burdens of proof that the defendants bear, trying to shift them to the plaintiffs at class certification, making us prove up our case on a class certification motion, which we don't have to do. We don't have to plead loss causation. We don't have to prove loss causation. If we erred under the pleading rules and anticipated an affirmative defense, which the Supreme Court in Vance v. Terrazza says we're not supposed to do, the Supreme Court in footnote 11 in that case also says that it can't be held against us. It doesn't shift any kind of an extra burden to us. We've got a case here where the defendants contend that if they go to trial, they're going to prove up a loss causation defense that, according to their theory of their defense in which they bear the burden, market efficiency matters. And they say we have to prove whether the market was efficient. Market efficiency is a relative concept. If a stock price immediately reflects all available information so you cannot make profits by learning of new information, the market's efficient. If it takes a week for the stock price to reflect new information, it's not efficient. We've got a case where any proof on the point would be theirs to come in and prove, and they haven't done it. They accuse us of hiding the ball, but it's their ball. And their expert simply puts in a declaration that says unless the plaintiffs show that the market is efficient, the elements of materiality and loss causation are going to be individual issues. Well, if they think that it's relevant to their case, let them come in with their evidence, and we'll figure out what's going on. Let's say that you can establish that a material misrepresentation was made, then your next step, I suppose, would be the assessment of damages. Yes, Your Honor. How, in light of the district court's order, would you go about that? I mean, there are those who did not lose anything in their investment. So not everyone is going to be a victim in the class. There are going to be a few people near the very end of the class period who perhaps purchased at a price that was basically at the price on the data suit. So toward the tail end of the class period, they might be able to carry their burden on a few of the class members. For most of the class period, though, you're watching a fairly consistent decline in the stock price. The stock starts out at $12 a share in the initial public offering. By July, it's down to $8 or $9. The July 29th and 30th press release and conference trigger another 30% drop. So you've got a 30% drop up to that, another 30% drop. And it keeps heading down to the point that they say, well, you know what, we've got to restate our goodwill, given what's being reflected in this company's stock price. Again, individual reliance has no place in this case. There's no basis for thinking that individual class members in this case had knowledge of the misstatements and bought the stock anyway. They haven't shown that there's any basis to think that there's going to be a significant number of investors of which that might be true. And the Supreme Court's case holding in basic that in 10B cases, the availability of an individual non-reliance defense does not preclude class certification would be controlling. With respect to calculation of the damages, you'll have the statutory scheme. Somebody who bought the stock at $9 and held it to the end of the class period, you'd be looking at the purchase at $9, and you'd be looking at subtracting the $5.20. And there's the prima facie evaluation. If the defendants can show a depreciation in value was due to other factors, then they can reduce the amount of the damages. But that's no different than a 10B class action where you've got a value line throughout the class period, and you're plotting the price paid, the amount of inflation, and the loss causation standards for 10B, the plaintiff has to prove loss causation and demonstrate that the inflation came out of the stock price. Here, the presumptions are all in the plaintiff's favor, and all of the burdens are in the defendant's. They haven't carried those burdens, and they're trying to shift them to the plaintiffs at class certification, saying that there are going to be individual issues at trial when there aren't going to be. That's basically what it comes down to. Unless there are any questions, I think that pretty much covers the central issues that are presented by the appeal. I think you answered Judge Rendell's question. Let me ask it again. You don't know of any case in which a Section 11 complaint was brought that was not a class action? Or was denied. Any Section 11 case where class certification was denied. I personally do not know of any such case. I cannot represent to the court that no such case exists. We'll ask your colleague. Thank you very much. Let me try again, because I'm obviously not doing a very good job. But can I ask that question? A Section 11 case where class action's been denied. The IPO case in the Second Circuit. IPO case in the Second Circuit. Decided by Judge Newman. And, in fact, one of the members of the panel was Judge Sotomayor. I doubt whether she'll get asked about that case today. But it's of more interest to me than the other cases. Let me try to go back to the beginning and do the reverse sort of of the question you just asked. The plaintiff has cited to no case, and we are aware of none, where a Section 11 case was ever certified as a class action in an inefficient market context. Let's understand where we are. This is very unusual. Plaintiffs always allege, in part because they bring Section 11 cases with 10b-5 cases. Are you saying this is necessarily an inefficient market situation? No. Oh, okay. In fact, it could be efficient because the stock price went down? Absolutely wrong. That's the whole point. But why do the plaintiffs have to plead that? Well, but here's what happens. Let's talk about what happens here. This circuit, as the Court is well aware, has the Burlington Coat Merkle, which essentially says that at the pleading stage, you have to take a look at whether, at the time of the corrective disclosure, the stock price went down. If the stock price did not go down, then whatever was disclosed, whatever the supposed misrepresentation was, is not material, and that claim goes away. So what we have here is a critical claim in this case is the write-down of goodwill. The problem that the plaintiffs saw correctly was that when the announcement was made about the write-down of goodwill, guess what happened? The stock price did not go down. We moved, therefore, to dismiss. It had already gone down, had it not. Well, the issue is, yeah, the stock price went down some, but the question, you always have to link up on a loss causation basis whether the stock price went down in connection with the supposed misrepresentation or for some other reason. For example, just bad earnings, not a misrepresentation. So when the goodwill write-down was announced, the stock price went down. Their response to that could have been, geez, it went down for some other reason, the thing had leaked out, you know, you lose. That wasn't what they did. What they did was to say, aha, the Merck rule only applies in the efficient market context. So guess what? We're not going to tell you whether it's an efficient market or not. That's our view of the situation. We're not going to tell you whether we think it's an efficient market or not. Despite the fact that they had pled in their complaint that the stock traded on NASDAQ, that it was covered by analysts, and the stock had, in fact, reacted to information flow that would impact prices of stock. So they said, in essence, na-na-na, we're not going to tell you, you can't win. All right, we'll ask you to summarize if you would. And so what essentially is going to happen here, if the court fails to focus on the fact that the district court needed to deal with these issues and the district court did not deal with these issues, is that plaintiff after plaintiff now in Section 11 cases will simply refuse to take any position on whether the market is efficient or not. And the Merck rule, which was supposed to be applied at the pleading stage, is going to go out the window. And Merck, which said that its rule applies to Section 11 cases, will be effectively overturned. That's why this distinction between an efficient market and an inefficient market is so critical, and why no court has ever certified a Section 11 case as a class action in the presence of an inefficient market. Thank you. Thank you. All right, thank you, Counsel. The case was well argued. We take it under advisement.